## Nathan L. S. Lenheim v. Barnabas M. Fay and another.

*Promissory notes: Endorsement: Fraudulent representations: Statute of frauds.*
In an action against an endorser upon a promissory note, the fact that the endorsement was procured by means of false and fraudulent representations made by the plaintiff to the endorser, through the procurement of the maker of the note, as to the pecuniary responsibility of the latter, is a good defense; the statute of frauds (*Comp. L. 1871*, § 4701) requiring representations "concerning the character, conduct, credit, ability, trade, or dealings of any other person," to be in writing, etc., has no application to such a case.

*Fraud: Endorsement: Bona fide purchaser: Notice.* One who has been privy to, and a participant in, the fraudulent procurement of an endorsement has notice of the fraud, and cannot become a *bona fide* purchaser of the paper endorsed, so as to be entitled to recover upon the contract of endorsement.

*Heard April 9.    Decided April 15.*

Error to Saginaw Circuit.

*I. M. & H. P. Smith* and *Gaylord & Hanchett,* for plaintiff in error.

*Wisner & Draper,* for defendants in error.

COOLEY, J.

Fay and Hollon brought suit against Lenheim upon his endorsement of a promissory note, made by Dwight G. Holland, for the payment of twenty-five hundred dollars to the order of Lenheim, and endorsed by the latter for the accommodation of the maker. The defense was that the endorsement was obtained by fraud, and that the plaintiffs were not holders in good faith:

The defendant's case was this: Holland came to him and requested him to endorse the note. He refused upon the ground that he doubted Holland's responsibility. Holland then said that the note was to be discounted by Joe A. Hollon, one of the plaintiffs, who knew all about his circumstances, and he referred defendant to said Joe A. Hollon for information regarding his responsibility. Defendant thereupon went to the banking-house of the plaintiffs, where he communicated to Joe A. Hollon the conversation he had had with Dwight G. Holland, and Joe A. Hollon then, with full knowledge that defendant had been sent to him by Dwight G. Holland for information to guide him in determining whether to endorse the note in question, gave him very strong assurances that Dwight G. Holland was responsible and was owner of a large amount of property over and above all his liabilites, influenced by which defendant returned and endorsed the note, and the same was then taken to, and discounted by, the plaintiffs. These assurances of Joe A. Hollon are claimed to have been wholly at variance with the facts; Dwight G. Holland being then, as Joe A. Hollon well knew, entirely irresponsible and insolvent, and having liabilities exceeding his assets by some twenty-five thousand dollars.

The circuit judge held these facts to constitute no defense to the suit, and directed verdict and judgment for the plaintiffs for the amount of the note. This conclusion is supposed to be justified by a section of our statute of frauds, being *section 5 of chap. 81 of the Revised Statutes of 1846 (Comp. L. 1871, § 4701)*, which provides that, "No,

action shall be brought to charge any person upon, or by reason of, any favorable representation or assurance made concerning the character, conduct, credit, ability, trade, or dealings of any other person, unless such representations or assurances be made in writing and signed by the party to be charged thereby, or by some person thereunto by him lawfully authorized." It is conceded that the representations of Joe A. Hollon were not in writing, and that the defense must fail if the case is within the statute.

It is presumed that the view taken by the circuit judge was substantially identical with that taken by the counsel for Fay and Hollon on the argument in this court. The statute, it is insisted, forbids any action being brought to charge Joe A. Hollon upon the representations made by him as above set forth. But if he cannot· be charged in an action brought against him founded thereon, neither can the representations be made available as a defense to a suit brought by him, in such manner as to deprive him of a valuable right which he might otherwise enforce. To permit this would be to defeat the evident purpose of the statute. It would make its operation depend upon the unimportant circumstance that in the particular suit the party making the representations was plaintiff instead of defendant; if defendant, they could be of no avail; if plaintiff, they might be made use of against him.

Such is the position taken; and in support of it our attention is called to several cases supposed to be in point, which we will briefly consider. In *Finch v. Finch, 10 Ohio, N. S., 507,* a verbal ante-nuptial agreement upon which, by the statute of frauds, no suit could be brought, was held not available by way of defense to a proceeding for the assignment of dower. In *Comes v. Lamson, 16 Conn., 246,* it was decided that an action to recover the value of personal services could not be defeated by showing that the services were performed under a parol contract which, by its terms, was not to be performed within a year from the making. The like decision was made in *King v. Welcome, 5 Gray, 41.* But it will be observed in each of these cases

the purpose of the defense was to make the verbal agreement available as a valid contract; and if the attempt had been successful, the verbal contract would in effect have been enforced, and precisely the same benefit would have been had under it that could have been obtained by sustaining the contract in affirmative proceedings instituted for its enforcement. For cases thus circumstanced the doctrine is very clearly and concisely stated by Lord Abinger in *Carrington v. Roots, 2 M. & W., 254.* "The question," he says, "is whether that section which declares that no action shall be brought on a contract, etc., means that the contract shall be available for any purpose as a contract, except that of being enforced by action. I think it does not; and that the contract cannot be available as a contract at all, unless an action can be brought upon it." This is a very clear and accurate statement of the conclusion arrived at in the several cases upon which the plaintiffs rely. If it is sought to enforce the ineffectual contract in any form, the statute is held to forbid it equally whether the party relying upon it is plaintiff or defendant.

But it cannot be said with any accuracy that it is sought in this case to make use of the representations as a contract, or to charge the plaintiffs upon, or by reason of them, unless some different effect or some greater force is to be given such representations as against the plaintiffs from any they could have had if proved in a suit with third persons. If they are to affect a suit brought upon the note by these parties, only in the same way and to the same extent as they might have affected a suit brought by any third person upon the note, then it is manifest the representations do not derive their importance in the suit from the circumstance of having been made by a party to it; but on the contrary, they are important only by reason of their falsity, and because of being made by the procurement of the maker of the note, and for the purpose of obtaining the endorsement by means thereof. Such being the case, it is evident that the proof is not put in in order to

charge the party plaintiff, either by defeating a valid contract in his hands, or by reducing a recovery thereon, as might be done through the establishment of some set-off or claim to recoupment. On the contrary, the purpose is to show that no valid contract ever came to his hands; that he has purchased a paper which in its inception was wholly void and worthless, and upon which, consequently, no person could possibly have a right of recovery, unless he has become possessed of it under such circumstances of good faith and payment of value, as by the rules of the law merchant will preclude the invalidity being set up and relied upon. The defense of fraud, therefore, is not personal to the party who sues; its purpose is not in any way to charge or affect him personally, but the evidence of fraud is aimed at the validity of the contract previous to its coming to the plaintiffs' hands, and nothing in the case will be peculiar by reason of any particular person being plaintiff, except the facts which attended his purchase of the paper, and which might tend to show his good faith, or, on the other hand, to charge him with notice of the fraud. Indeed, in the case before us, it is not Lenheim who insists that the suit should be affected by the circumstance that the representations were made by one of the parties suing, but it is the plaintiffs who set up this claim. His position is, that the endorsement is void by reason of the false representations of the maker's agent by means of which it was procured; but the plaintiffs in effect say: "True, this contract may be void in the hands of others, but in our hands it cannot be shown to be so, inasmuch as one of us was the agent through whose representations it was procured; and though, as against any other persons, you might prove these representations false and fraudulent, as to us, you are precluded by the statute of frauds, and in consequence of our very agency in the fraud, from making the fact appear." Such in effect is their position; and it is manifest that, instead of making use of the statute to prevent a charge being established against them, they are

relying upon it to build up a right in their own favor, which confessedly could not exist in favor of any other person who should become owner of the note with the like knowledge of the facts attending its inception. Assuming that there was fraud in the case, then, upon the plaintiffs' theory, the party who was the instrument of the fraud, may recover upon the contract though another could not, because the law will permit the fraud to be proved as against others, but not as against him. This is certainly to give a very peculiar and anomalous effect to the statute; and if the position is correct, this is probably the only instance in the law in which a party is permitted, because of his own participation in a fraud, to claim and enjoy valuable pecuniary privileges and exemptions, which are not permitted to parties who were strangers to it. But to state the position seems to us sufficient to disprove it, and to show how wide a departure such a construction would be from the purpose of a statute which was passed to prevent frauds, and not to encourage their commission.

When the indorsement is shown to have been invalid in its inception, it is only necessary for the defendant to prove the additional fact that the plaintiffs took the note with knowledge or notice of the invalidity. It is immaterial how this notice came to them, so that they actually had it in due season. What the defendant claims in this case is, that the plaintiffs had notice of the fraud by reason of one of them having been privy to, and a participant in it. If he was thus privy to it, then it is manifest that the plaintiffs cannot recover upon the contract of indorsement, because it would be impossible for them, under such circumstances, to become purchasers of the note in good faith and in reliance upon it as a valid and legal instrument.

It follows that the circuit judge erred in his instructions to the jury, and that the judgment should be reversed, with costs, and a new trial ordered.

The other Justices concurred.